1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EDDIE HOLTZCLAW, | ) | 1:09-cv-01599 GSA |
| | ) | |
| Plaintiff, | ) | **ORDER REGARDING DEFENDANT'S** |
| | ) | **MOTION FOR SUMMARY JUDGMENT,** |
| v. | ) | **OR, IN THE ALTERNATIVE,** |
| | ) | **SUMMARY ADJUDICATION** |
| CERTAINTEED CORPORATION, and | ) | |
| DOES 1 through 50, inclusive, | ) | (Document 43) |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## INTRODUCTION

Defendant Certainteed Corporation ("Certainteed") seeks summary judgment, or alternatively summary adjudication, on Plaintiff Eddie Holtzclaw's ("Plaintiff") claims for disability discrimination, age discrimination, failure to accommodate disability, retaliation or wrongful termination, and punitive damages.  Plaintiff contends that factual issues as to Certainteed's grounds to terminate his employment prevent summary judgment.

## RELEVANT PROCEDURAL BACKGROUND

Plaintiff filed his complaint in the Madera County Superior Court on July 10, 2009. (Doc. 1, Ex. A.)

1

On September 9, 2009, Defendant answered the complaint and removed the action to this Court based upon diversity jurisdiction.  (Doc. 1 & Ex. B.)

On November 30, 2010, Defendant filed its Motion for Summary Judgment, or, in the Alternative, Summary Adjudication.  (Docs. 43-50.)  On December 21, 2010, Plaintiff filed an opposition to the motion, as well as a Statement of Disputed Materials Facts and Evidentiary Objections.  (Docs. 51-57.)  On January 12, 2011, Defendant filed its reply to the opposition, as well as Objections to Plaintiff's Evidence.  (Docs. 58-60.)

On January 18, 2011, the Court vacated the hearing on the motion and took the matter under submission pursuant to Local Rule 230(g).  For the reasons discussed below, this Court GRANTS Certainteed's motion for summary judgment.

### STATEMENT OF UNDISPUTED FACTS[1]

1.      Plaintiff began working for Certainteed in 1979 as a Maintenance Mechanic, Step II, and held a variety of positions until he was laid off in July 2008.

2.      Plaintiff was an at-will employee at all times during his employment with Certainteed.

3.      Plaintiff was born on April 25, 1953.

4.      On or about July 26, 2007, Plaintiff was provided a written memorandum from his supervisor, Dave Clark ("Clark"), setting forth areas wherein his performance was deficient and indicating Plaintiff was reassigned to a position as a Maintenance Buyer, responsible for purchasing spare parts for the plant and overseeing inventory.  The memorandum also indicated that he would no longer be responsible for supervising other employees because of he was unable to do so effectively.  Plaintiff's official job title remained as Maintenance Scheduler/Supervisor.

---

[1]This Court carefully reviewed and considered all evidence, arguments, points and authorities, declarations, testimony, statements of disputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to evidence, an argument, document, objection or paper is not to be construed that this Court did not consider the evidence, argument, document, objection or paper.

5.    Certainteed made an effort to find another position for Plaintiff that would better utilize his skills and remove him from performing tasks for which he had poor performance, such as supervising employees.

6.    Plaintiff had performance issues with respect to the duties required by the Maintenance Supervisor/Schedule position, as reflected in his separate performance reviews for 2006 and 2007.  In both years, he was rated as "2" out of a possible "5."  He did not receive a salary increase in 2006.

7.    James Vicary ("Vicary") and Clark discussed terminating Plaintiff prior to Plaintiff receiving the July 26, 2007 written warning, prepared by Clark, due to his consecutive years of poor performance reviews.  The Company did not terminate him at that time and reassigned him to the Maintenance Buyer position.

8.    The July 26, 2007 memoranda stated, and Plaintiff was verbally informed, that failure to improve his performance would result in his termination.

9.    Plaintiff was stripped of all supervisory duties and signed receipt of the July 26, 2007 memoranda and began working in the Maintenance Buyer position.

10.    The Maintenance Buyer position job duties included requisitioning purchase orders for parts for the storeroom.

11.    Plaintiff had performance issues in the Maintenance Buyer position as well, including that he lacked management-level initiative, did not initiate innovative ideas to make the store room or purchasing systems operate more efficiently, and did not implement computer training classes he took to improve his performance.  Also, there were issues with employees obtaining parts from the storeroom on a timely basis.  In addition, Plaintiff did not ensure that raw materials on the loading dock were properly received, processed and stored, and did not perform regular cycle counts of inventory.

//

//

12.     During his employment with Certainteed, Plaintiff requested and received several medical leaves of absence - in 1997 (diabetes), 1999 (neck surgery), 2001 (lower back surgery), 2002 (lower back surgery) and 2008 (neck surgery).

13.     Certainteed never denied any of Plaintiff's requests for medical leaves of absence and all leaves were paid according to Company policy.

14.     In each and every instance, Plaintiff was not only provided with 12 weeks of leave to which he was entitled under the Family Medical Leave Act ("FMLA") and California Family Rights Act ("CFRA"), but also, in several instances, Certainteed provided Plaintiff with additional leave and returned him to the same position, though not required to do so.

15.     On or about January 16, 2008, Plaintiff requested a medical leave of absence of 20 to 24 weeks for upcoming neck surgery and recovery.

16.     The January 2008 leave request was Plaintiff's first leave request in six years and occurred after he was issued the July 2007 warning.

17.     In January 2008, Certainteed informed Plaintiff that he was eligible for FMLA/CFRA leave for up to 12 weeks (i.e., up to April 9, 2008), and eligible to take the balance of the leave under the Company's medical leave policy and receive short term disability benefits.

18.     Plaintiff took medical leave for neck surgery and recovery for approximately 17 weeks, from January 16, 2008 until May 19, 2008.

19.     While Plaintiff was on leave in 2008, his job functions were performed by several individuals who were existing employees, including one younger employee, Shannon Crouch ("Crouch"), and Gary Stofle ("Stofle"), one of Plaintiff's supervisors who is over 40.

20.     While Plaintiff was on medical leave in 2008, employees who needed parts for projects they were working on wrote up requisition forms and dealt with purchasing parts on their own.  As such, there was no one person performing Plaintiff's job duties while he was on leave.

21.     Crouch was hired in May 2005 as a Project Engineer.  He also performed various other job functions during the time period he assisted in covering Plaintiff's job duties that were not part of Plaintiff's maintenance buyer job functions, including plant beautification projects, hiring outside contractors to perform work at the plant, and working on other projects.

22.     Stofle's job title was and is Maintenance Superintendent.  He also performed various other job functions during the time period he assisted in covering Plaintiff's job duties when Plaintiff was on medical leave in 2008, including running the day-to-day operations of the storeroom.

23.     The FMLA/CFRA portion of Plaintiff's leave expired on or about April 9, 2008, but Plaintiff was not able to be released to work by his doctor at that time so he remained on leave pursuant to the Company's medical leave policy until he was released to full duty as of May 19, 2008, pursuant to the May 13, 2008 doctor's note he provided to Certainteed.  Plaintiff returned to work on May 19, 2008, approximately 5 weeks after his FMLA/CFRA leave expired.

24.     Plaintiff was on leave for approximately 17 weeks total in 2008, and as with his other leaves, he was fully paid while on leave.

25.     Prior to his return, Certainteed's third party leave administrator requested that Certainteed provide information on the physical requirements of Plaintiff's job duties.  That information would be provided to Plaintiff's doctor so that the doctor could assess whether he could return to work and whether he needed an accommodation.  Carol Long ("Long"), Certainteed's Chowchilla Human Resources Manager, provided the requested description. Plaintiff's doctor's note released him to full duty without need for accommodation.

26.     Nationwide, over the past several years, Certainteed's insulation division lost business and even closed one facility in the United States.

27.     Due to economic conditions, Chowchilla Plant Manager Vicary was directed by his superiors to reduce costs at the Chowchilla plant.  Managers of Certainteed's other insulation plans were given similar directives.

28.     Due to the decline in business and economic conditions, Certainteed's Chowchilla facility had to downsize its workforce over the past several years, which included layoffs of both salaried and hourly employees.

29.     By the time Plaintiff returned from his leave on May 19, 2008, Certainteed had determined that there was no longer enough work to justify a full-time position as maintenance buyer because of the continued decline in business and the fact that Plaintiff's job duties were easily absorbed by others.

30.     Upon returning from medical leave, Plaintiff was given a special assignment working on reducing inventory to cut plant costs.  This was not a new job position, as Plaintiff retained the same time, salary and benefits.

31.     The Chowchilla plant needed to reduce inventory due to continued lack of business.

32.     Plaintiff's supervisor Clark was told by plant manager Vicary that he should assign the task of reducing plant inventory to a subordinate.  Clark determined that Plaintiff could work on the project.

33.     Plaintiff was given the special assignment of reducing inventory instead of continuing job duties of purchasing because of poor performance in the purchasing duties prior to his 2008 medical leave, as well as the plant's continued lack of business volume and the lack of need for a full-time employee in purchasing.

34.     Plaintiff never requested a reasonable accommodation for disability upon return from medical leave in May 2008.

35.     Plaintiff admittedly did not require an accommodation when he returned from his medical leave on May 19, 2008 because he was not disabled and he was released to full duty with no restrictions.

36.     At no time did Certainteed perceive Plaintiff as disabled or fail to make a reasonable accommodation for Plaintiff based on any such perceived disability.

37.     Plaintiff had no reason to state that Certainteed reassigned his job upon return from leave because it perceived him as disabled.

38.     Plaintiff did not complain about being treated differently due to disability when he returned to work in 2008.  The only time Plaintiff ever made a complaint that he was being treated differently due to disability at any time was on one occasion in 1997 when there was only sugared soda available.  Plaintiff cannot drink sugar soda due to his diabetes.  A diet soda was provided.

39.     Plaintiff never complained about age discrimination either during or after his employment with Certainteed even though he knew the Company's avenues for making such complaints.

40.     Certainteed's insulation division suffered a continued downturn in business throughout 2008 and needed to reduce plant costs and headcount.  In reviewing ways to cut costs in the insulation division, and at the Chowchilla plant specifically, Certainteed determined it would need to layoff or eliminate the positions of some salaried and hourly employees.

41.     In determining which employees would be laid off, Vicary and Clark considered the employee's performance, whether the employee was performing a non-critical function, and whether the employee was able to perform other functions for business continuity.  Length of service was considered but was not the primary consideration.

42.     Plaintiff was selected for layoff because the company no longer needed anyone in his job position due to the lack of business and the fact that his job duties were absorbed by others.  Also, he had received successive poor performance reviews, and had been issued a final warning.

43.     Plaintiff's job was eliminated and he was laid off on July 14, 2008.

44.     Prior to his layoff, Certainteed looked for another job assignment for Plaintiff but determined there was no available position.  As a result, Plaintiff was laid off.

1    45.    Plaintiff received 20 weeks' severance pay following his layoff with no

2    conditions, including no requirement that he sign a release of claims.

3    46.    Several other salaried employees were also laid off before and after Plaintiff in

4    2008 and 2009, including the employee Plaintiff claims replaced him, Crouch, who was laid off

5    in May 2009, approximately 10 months after Plaintiff.

6    47.    The Chowchilla plant laid off a number of both salaried and hourly employees,

7    including long-term employees.  Between October 2005 and April 2009, 57 out of approximately

8    220 employees at the Chowchilla facility were laid off, including Plaintiff and Crouch.  The large

9    majority of laid off employees were under 40 years old.  Only 28% of the laid off employees

10   were over 40 years old.

11   48.    There were no salaried employees hired or rehired in 2009.

12   49.    None of the individuals involved in making the decision to layoff Plaintiff - Long,

13   Vicary and Clark - exercise substantial discretionary authority over determining corporate policy

14   for Certainteed.

15   **LEGAL STANDARDS**

16   Rule 56(b) of the Federal Rules of Civil Procedure[2] permits a "party against whom relief

17   is sought" to seek "summary judgment on all or part of the claim."  Summary judgment is

18   appropriate when there exists no genuine issue as to any material fact and the moving party is

19   entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. v. Zenith*

20   *Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific*

21   *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The purpose of summary judgment

22   is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for

23   trial."  *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of*

24   *Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

25

26   

27   [2]The Court acknowledges the December 2010 amendments to Rule 56, however, because Defendant's
motion was filed November 30, 2010, the Court will employ the pre-amendment language of the rule.

28   8

1    The moving party

2    always bears the initial responsibility of informing the district court of the basis
     for its motion, and identifying those portions of "the pleadings, depositions,
3    answers to interrogatories, and admissions on file, together with the affidavits, if
     any," which it believes demonstrate the absence of a genuine issue of material
4    fact.

5    *Celotex Corp., v. Catrett*, 477 U.S. 317, 323 (1986).

6         To carry its burden of production on summary judgment, a moving party "must either

7    produce evidence negating an essential element of the nonmoving party's claim or defense or

8    show that the nonmoving party does not have enough evidence of an essential element to carry its

9    ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*,

10   210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance*

11   *Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the

12   motion, the moving party must persuade the court that there is no genuine issue of material fact."

13   *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the

14   substantive law will identify which facts are material. Only disputes over facts that might affect

15   the outcome of the suit under the governing law will properly preclude the entry of summary

16   judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

17        "If a moving party fails to carry its initial burden of production, the nonmoving party has

18   no obligation to produce anything, even if the nonmoving party would have the ultimate burden

19   of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes v. S.H. Kress & Co.*, 398

20   U.S. 144, 160, 90 S.Ct. 1598 (1970). "If, however, a moving party carries its burden of

21   production, the nonmoving party must produce evidence to support its claim or defense." *Nissan*

22   *Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to

23   produce enough evidence to create a genuine issue of material fact, the moving party wins the

24   motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*,

25   477 at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for

26   discovery and upon motion, against a party who fails to make the showing sufficient to establish

27

28                                                9

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. Fed.R.Civ.P. 56(c); *Covey Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. at 157; *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

Rule 56(d)(1) of the Federal Rules of Civil Procedure provides that a summary judgment/adjudication motion, interlocutory in character, may be rendered on the issue of liability alone. "In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir.

1   1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v.*

2   *Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989).  A court "may grant

3   summary adjudication as to specific issues if it will narrow the issues for trial."  *First Nat'l Ins.*

4   *Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

**DISCUSSION**

### Plaintiff's Age Discrimination Claim

7   The California Fair Employment and Housing Act ("FEHA") outlaws employment

8   discrimination against individuals over forty.  *See* Cal. Gov't Code §12941.  "California has

9   adopted the three-stage burden-shifting test established by the United States Supreme Court for

10  trying claims of discrimination, including age discrimination."  *Guz v. Bechtel National, Inc.*, 24

11  Cal.4th 317, 354 (2000).

12          A plaintiff must first establish a prima facie case of discrimination.  If the
        plaintiff establishes a prima facie case, the burden then shifts to the defendant to
13      articulate a legitimate non-discriminatory reason for its employment decision.
        Then, in order to prevail, the plaintiff must demonstrate that the employer's
14      alleged reason for the adverse employment decision is a pretext for another
        motive which is discriminatory.

16  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citations omitted); *Morgan v.*

17  *Regents of Univ. Of Cal.*, 88 Cal.App.4th 52, 68-69 (2000).

18              *Prima Facie Case*

19  To establish a claim under this theory, Plaintiff must show that (1) at the time of the

20  adverse action he was forty years of age or older; (2) he was satisfactorily performing his job; (3)

21  an adverse employment action was taken against him; and (4) some other circumstance

22  suggesting a discriminatory motive was present, such as his replacement by a significantly

23  younger worker with similar qualifications.  *Guz v. Bechtel National, Inc.*, 24 Cal.4th at 355.

24  Here, when he was laid off or terminated on July 14, 2008, Plaintiff was fifty-five years

25  of age, thus satisfying the first element of the prima facie case.  Relatedly, Plaintiff's termination

26  or lay off is an adverse employment against taken against him, thus satisfying the third element

28                              11

of the test.  However, this Court finds that Plaintiff cannot meet either the second or fourth

element of his prima facie case.

In particular, the facts before the Court indicate that Plaintiff was not satisfactorily

performing his job.  In fact, he had received warnings of his less than satisfactory performance

nearly one year earlier - on July 26, 2007 - and had indication of the same in 2006.  Additionally,

despite a demotion and special assignment, to better utilize Plaintiff's skills, he failed to perform

satisfactorily. (Clark Depo.[3] at 23-31, 35-38, 45, 47-48, 89, 98-99.)  Plaintiff relies upon the fact

that he had satisfactory performance reviews in the past, however, his performance reviews from

1995 through 2004 are simply not relevant to whether or not he was satisfactorily performing his

job in 2008.  In 2008, Vicary believed Plaintiff's performance remained poor.  (Vicary Depo. at

84, 97.)  Clark concurred.  (Clark Depo. at 28-30, 47-48, 69-73.)

Next, the Court finds that Plaintiff cannot establish that some other circumstance

suggesting a discriminatory motive was at work.  Crouch was indeed some eighteen years

younger than Plaintiff, however, Crouch - a project engineer - did not replace Plaintiff as

maintenance buyer, or any other position previously held by Plaintiff.  Stofle - maintenance

superintendent - was only three years younger than Plaintiff, thus not significantly younger, and

he too did not replace Plaintiff.[4]  Rather, Plaintiff's job duties were primarily assumed by both

Crouch and Stofle, to whatever degree, *in addition to the duties already performed in their*

*respective positions*.  (Clark Depo. at 39-43, 48, 162, 85-87; Long Depo. at 38-41, 59-61, 64;

Stofle Depo. at 39-40; Vicary Depo. at 81, 84,120-121.)  Plaintiff's reliance upon the facts he

trained Crouch for seventy hours prior to taking medical leave, and that Crouch called him at

home several times to ask questions, do not amount to genuine issues of material fact regarding a

discriminatory motive.

---

[3]This Court's various references to deposition transcripts refer to page numbers only.

[4]Following Crouch's subsequent lay off, the duties Plaintiff previously performed are performed in part by
Stofle.

1    Assuming arguendo that the Court did find Plaintiff had established a prima facie case,

2  the Court finds that Defendant is entitled to summary judgment for the reasons set forth below.

3                    *Certainteed's Legitimate Non-Discriminatory Rationale*

4    Once a FEHA plaintiff has demonstrated a prima facie case, the burden shifts to the

5  employer to articulate some legitimate non-discriminatory reason for the employee's rejection.

6  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Morgan*, 88 Cal.App.4th at 69.

7  "'[T]he defendant must clearly set forth, through the introduction of admissible evidence,'

8  reasons for its actions which, if believed by the trier of fact, would support a finding that

9  unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center*

10 *v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S.

11 248, 254-55 (1981); *see Guz*, 24 Cal.4th at 356.  This is merely a burden of persuasion, not proof,

12 as the ultimate burden of persuasion resides with the employee.  *St. Mary's*, 509 U.S. 508; *see*

13 *Villiarimo v. Aloha Island Air., Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002); *Guz*, 24 Cal.4th at

14 355-56.  The employer need only articulate, not prove a legitimate, non-discriminatory reason for

15 deciding to terminate the plaintiff.  *See Univ. of Southern Cal. v. Superior Court*, 222 Cal.App.3d

16 1028, 1039 (1990) (employer met its burden "through the introduction of admissible evidence

17 [setting forth] the reasons for the plaintiff's rejection").

18    Moreover, courts "only require that an employer honestly believed its reasons for its

19 actions, even if its reason is foolish or trivial or even baseless."  *Villiarimo*, 281 F.3d at 1062;

20 *Guz*, 24 Cal.4th at 358 (reasons need not be "wise or correct"); *see also King v. United Parcel*

21 *Service, Inc.*, 152 Cal.App.4th 426, 436 (2007) ("[i]t is the employer's honest belief in the stated

22 reasons for firing an employee and not the objective truth or falsity of the underlying facts that is

23 at issue in a discrimination case").

24    Certainteed has met its *McDonnell Douglas* burden.  Specifically, Vicary and Clark made

25 the decision to terminate Plaintiff's employment because the economy had negatively impacted

26 the Chowchilla plant and Vicary had been directed to lay off personnel in the Chowchilla plant.

27

28                                          13

1    (Clark Depo. at 78-84, 88, 101-103; Vicary Depo. at 79-80, 83-84, 86, 92-96, 103, 136-137; *see*

2    *also* Long Depo. at 33-34, 44-46, 58, 105, 134-135.)  A reduction-in-force is a legitimate

3    non-discriminatory reason for termination.  *Winarto v. Toshiba America*, 274 F.3d 1276, 1295

4    (9th Cir. 2001); *Martin v. Lockheed Missiles*, 29 Cal.App.4th 1718, 1732, 35 Cal.Rptr.2d 181

5    (1994).  More particularly, Vicary declared as follows:

6            6.      As Plant Manager for the Chowchilla plant, I was required to
         implement the plant's budget. The total budget for the Chowchilla plant, which
7        includes overhead expenses and salaried headcount, decreased 2.9% from 2007 to
         2008, and 14.9% from 2008 to 2009.  Accordingly, the total budget for the
8        Chowchilla plant in 2009 was 17.4% less than it was for 2007.
         7.      As Plant Manager for the Chowchilla plant, I oversaw production
9        schedules of the plant and how much product the plant produced.  The Chowchilla
         plant had a decline in business in 2007, 2008 and 2009 compared to peak
10       production in 2005.  Production pounds dropped by 13% from 2007 to 2008,
         which meant 2008 production was 24% below 2005 peak production.  We
11       forecasted further reductions in demand for 2009, which ended up being 38%
         below 2005 peak production.

12

13   (Doc. 48 at 2.)  Vicary testified at his deposition that the plant "was performing quite poorly and

14   there was tremendous pressure" to reduce costs, including positions.  (Vicary Depo. at 80.)  The

15   "head counts" at the Georgia, Kansas, and Pennsylvania plants were also to be reduced as a result

16   of the business climate.  (Vicary Depo. at 95-96.)

17       Additionally, because Plaintiff's performance reviews for the years 2006 and 2007 were

18   less than satisfactory, and because his performance as maintenance buyer and in the special

19   assignment did not improve, Plaintiff's performance continued to be less than satisfactory.

20   Despite Plaintiff' contention to the contrary, there is evidence that Plaintiff's performance was

21   not satisfactory at the time of the adverse action.  Vicary testified that he considered "[t]he

22   financial need to cut costs and I had taken exception with [Plaintiff]'s performance for some

23   time, as I mentioned certainly from 2007 *and still then in June of 2008*, and I was making a

24   recommendation that he be terminated."  (Vicary Depo. at 84, emphasis added.)  Vicary also

25   testified that despite Clark's efforts to "play to [Plaintiff's] strengths" as far as job duties were

26   concerned, "by the time we had the meeting in June of '08, I think Mr. Clark was in agreement

27

28                                                      14

1    that given all the considerations [including] the market conditions and the need to reduce head

2    counts and cut costs in the plant that [Plaintiff] was not basically providing sufficient service to

3    the plant." (Vicary Depo. at 86.)  Further, Vicary testified that during June or July 2008, when he

4    was considering Plaintiff's termination, Plaintiff "was the poorest performing salaried employee

5    in the smallest job the plant had . . .." (Vicary Depo. at 97.)  In response to a question posed

6    regarding Plaintiff's job performance between Plaintiff's return from medical leave and the time

7    of the discussion concerning his possible termination, Vicary indicated that Plaintiff "was not

8    doing that well," that a more "aggressive" approach to inventory reduction had been sought, and

9    that Plaintiff gave "less than full effort." (Vicary Depo. at 115-117; *see also* Clark Depo. at 38,

10   56, 67-73.)

11          Plaintiff's reliance upon the fact that he had satisfactory performance reviews for the

12   years prior to 2006 is irrelevant.[5]  It is immaterial that at some point in the past Plaintiff was

13   satisfactorily performing his job duties.

14          Under FEHA, "[i]t is the employer's honest belief in the stated reasons for firing an

15   employee and not the objective truth or falsity of the underlying facts that is at issue in a

16   discrimination case." *See King*, 152 Cal. App. 4th at 436.  This Court finds that Certainteed

17   honestly believed in the necessity of downsizing staff at the Chowchilla plant in light of the

18   economic downturn and its effect on the plant operations, and that Plaintiff continued to perform

19   his job duties in a less than satisfactory manner.  Therefore, Certainteed has met its burden of

20   production, not proof, to "articulate some legitimate, nondiscriminatory reason for [its]

21   rejection." *McDonnell Douglas*, 411 U.S. at 802; *see Villiarimo*, 281 F.3d at 1062; *Guz*, 24

22   Cal.4th at 355-56.

23

24

25

26          [5]This is particularly so in light of Vicary's testimony considering the forced ranking procedure implemented
     in 2006 in order to obtain a better picture of an employee's performance when compared to other employees.
27   (Vicary Depo. at 39-61.)

28                                                    15

*Evidence of Pretext*

Because Certainteed has met its burden of production, the burden then shifts to Plaintiff to prove that Certainteed's explanation was merely a pretext to conceal discriminatory conduct. *McDonnell Douglas*, 411 U.S. at 804; *Villiarimo*, 281 F.3d at 1062; *Guz*, 24 Cal.4th at 354.  That is, an employee must show "a genuine factual question whether, viewing the evidence in the light most favorable to them, [the employer's] reasons are pretextual." *Chuang v. Univ. of Cal. Davis, Bd. Of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000); *see Guz*, 24 Cal.4th at 361-62.  The employee's burden of proof for this step is a preponderance. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  An employee may meet this burden by directly showing the employer was more likely motivated by discriminatory intent or indirectly showing the employer's explanation is unworthy of credence. *Reeves*, 503 U.S. at 143; *Villiarimo*, 281 F.3d at 1062; *Morgan*, 88 Cal.App.4th at 68-69.  Although Plaintiff may rely on circumstantial evidence to show pretext, such evidence must be specific and substantial evidence. *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 661 (9th Cir. 2002); *Morgan*, 88 Cal.App.4th at 69.

Plaintiff contends that Certainteed's asserted reasons for terminating him are pretextual and untrue.  Specifically, he asserts that "a discriminatory motive existed which can be inferred by the conduct of Defendant, including 'stray comments' regarding his age."  Plaintiff relies upon the California Supreme Court's decision in *Reid v. Google, Inc.*, 50 Cal.4th 512 (2010).

Significantly, the facts at play in *Reid* are easily distinguished from the facts in this case. In *Reid*, the plaintiff was subjected to derogatory age-related remarks by a supervisor and other employees "'every few weeks,'" including being told his "ideas were 'obsolete' and 'too old to matter.'"  He was also told he was "slow, fuzzy, sluggish, and lethargic," that he failed to act with urgency and lacked energy.  Further, plaintiff was called an "old man, old guy, old 'fuddy-duddy'" and that "his knowledge was ancient." *Reid v. Google, Inc.*, 50 Cal.4th at 518, 536.  In stark contrast, the comments made here include the following: (1) in 2006 or 2007, "Long [the human resources manager] told Plaintiff that he should 'think about retiring' and that he 'could

1  [retire and] take his wife out"; (2) in 2006, Clark told Plaintiff he "'must be getting up there old

2  enough that [Plaintiff] was thinking of retirement'"; and (3) on July 9, 2008, Long told Plaintiff

3  "that he had turned fifty five (55) while on medical leave and that he was 'old enough to retire.'"

4  The comments made in *Reid* are plainly different from those alleged here.

5         These isolated and "'stray' remarks are insufficient to establish discrimination" without

6  other indicia of discriminatory intent. *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th

7  Cir. 1990). Indeed, "remarks . . . when unrelated to the decisional process, are insufficient to

8  demonstrate that the employer relied on illegitimate criteria, even when such statements are made

9  by the decision-maker in issue." *Smith v. Firestone Tire & Rubber Co.,* 875 F.2d 1325, 1330

10  (7th Cir. 1989).

11         Plaintiff contends the aforementioned remarks by Long and Clark are "strong

12  circumstantial evidence, considered with the totality of the circumstances, that discriminatory

13  animus existed amongst Ms. Long and Mr. Clark and that Plaintiff's age was a motivating factor

14  in defendant's selective decision to terminate him," citing to *Reid v. Google, Inc.* The Court

15  disagrees. *See Nidds v. Schindler Elevator Corp*., 113 F.3d 912, 918-19 (9th Cir. 1996). It finds

16  the comments were unrelated to the decisional process and thus insufficient.

17         Lastly, the Court is somewhat perplexed by Plaintiff's assertion that Defendant's

18  reference to a lack of business and a reduction in force is "contradictory" with its assertion that

19  his "job duties were easily absorbed by others." The Court finds no contradiction. The fact that

20  a business entity no longer needs an employee to perform a particular set of duties, but may

21  require remaining employees to perform some of those duties, does not itself raise an inference of

22  pretext, nor does it amount to evidence of pretext.

23         In short, Plaintiff fails to meet his burden because he has not produced substantial,

24  specific evidence of pretext. Defendant's explanation is in fact worthy of credence. Summary

25  judgment on this claim is appropriate. *See Guz*, 24 Cal.4th at 354 ; *Morgan*, 88 Cal.App.4th at

26  68-69.

27

28

1    ***Plaintiff's Disability Discrimination Claim***

2        Plaintiff's FEHA cause of action alleges Certainteed unlawfully discriminated against

3    Plaintiff based on his disability in violation of California Government Code section 12940(a).

4        FEHA declares "as a public policy of this state that it is necessary to protect and

5    safeguard the right and opportunity of all persons to seek, obtain, and hold employment without

6    discrimination or abridgment on account of . . . physical disability, mental disability, [or] medical

7    condition . . .." Cal. Govt. Code, § 12920.  California Government Code section 12940(a)

8    provides that it is unlawful "[f]or an employer, because of . . . physical disability, mental

9    disability, [or] medical condition . . . to refuse to hire or employ the person . . . or to bar or to

10   discharge the person from employment . . . or to discriminate against the person in compensation

11   or in terms, conditions, or privileges of employment."

12       *Prima Facie Case*

13       Disparate treatment claims also have shifting burdens of proof.  A plaintiff has the initial

14   burden to prove by a preponderance of evidence a prima facie case of disparate treatment, that is,

15   a plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination."

16   *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981); *see St.*

17   *Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746-2747 (1993).  This may

18   be accomplished with direct evidence of discriminatory intent.  *Vasquez v. County of Los*

19   *Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).  "'Direct evidence is evidence which, if believed,

20   proves the fact [of discriminatory animus] without inference or presumption.'"  *Godwin v. Hunt*

21   *Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1988) (quoting *Davis v. Chevron, U.S.A., Inc.*, 14

22   F.3d 1082, 1085 (5th Cir. 1994)).  There is no direct evidence here.

23       A plaintiff may also establish a prima facie case of disability discrimination through

24   circumstantial evidence.  To do so, the plaintiff must show that he/she: (1) suffers from a

25   disability; (2) is a qualified individual; and (3) was subjected to adverse employment action

26   because of the disability.  *Faust v. California Portland Cement Co.*, 150 Cal.App.4th 864, 886,

27

28                                              18

58 Cal.Rptr.3d 729 (2007); *Brundage v. Hahn*, 57 Cal.App.4th 228, 236, 66 Cal.Rptr.2d 830,

835 (1997); *see McDonnell Douglas Corp. v. Green*, 411 U.S. at 802; *Wallis v. J.R. Simplot Co.*,

26 F.3d at 891; *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir. 1987), *cert.*

*denied*, 484 U.S. 1047, 108 S.Ct. 785 (1988).

   "The burden of establishing a prima facie case of disparate treatment is not onerous."

*Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.  At summary judgment/adjudication, the "requisite

degree proof necessary to establish a *prima facie* case . . . is minimal and does not even need to

rise to the level of preponderance of the evidence."  *Wallis*, 26 F.3d at 889.

   If plaintiff establishes a prima facie case, the burden shifts to the employer "to articulate

some legitimate, nondiscriminatory reason" for adverse employment action.  *McDonnell Douglas*

*Corp.,* 411 U.S. at 802, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 252-253, 101 S.Ct. at 1094-1095;

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000), *cert. denied*, 533 U.S. 950,

121 S.Ct. 2592 (2001); *Guz*, 24 Cal.4th at 355-356, 100 Cal.Rptr. at 379; *Brundage*, 57 Cal.App.

4th at 228, 66 Cal.Rptr.2d at 835.  If the employer presents admissible evidence that one of more

of plaintiff's prima facie elements is lacking or that the adverse employment action was based on

legitimate, nondiscriminatory factors, the employer is entitled to summary judgment/adjudication

unless the plaintiff produces admissible evidence to raise a triable issue of fact material as to the

employer's showing.  *Caldwell v. Paramount Unified School District*, 41 Cal.App.4th 189, 203,

48 Cal.Rptr.2d 448, 457 (1995).  If the employer carries its burden, plaintiff must have an

opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the

employer were not its true reasons but were a pretext for discrimination.  *McDonnell Douglas*,

411 U.S. at 804; 93 S.Ct. 1817; *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *see Brundage*, 57

Cal.App.4th at 228, 66 Cal.Rptr.2d at 835.

   Despite the burden shifting, the ultimate burden of proof remains always with the plaintiff

to show that the employer intentionally discriminated because of the plaintiff's disability. *See*

*Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Coleman*, 232 F.3d at 1281; *Rose v. Wells Fargo &*

1   *Co.*, 902 F.2d 1417, 1420-1421 (9th Cir. 1990).  By applying the shifting burdens of production

2   in the summary judgment context, "the judge [will] determine whether the litigants have created

3   an issue of fact to be decided by the jury." *Burdine*, 450 U.S. at 255, n.8, 101 S.Ct. at 1094, n.8.

4       With the shifting burdens in mind, this Court turns to Certainteed's challenges to

5   Plaintiff's prima facie case of discrimination.

6                           1.       Disability of Plaintiff

7       Certainteed contends Plaintiff admitted he did not have a disability as defined by FEHA

8   after he returned from medical leave, nor did Plaintiff consider himself disabled.  As a result,

9   Certainteed contends Plaintiff has not met his burden.  Certainteed relies upon Plaintiff's

10  deposition testimony that he did not consider himself disabled following his return to work in

11  May 2008 and thereafter.

12      Plaintiff contends "the evidence presented establishes the inference of discrimination by

13  Defendant's conduct."  He claims the following in support thereof: (1) that Clark reassigned him

14  to work on a special project an inventory reduction specialist; (2) that Clark was "almost"

15  immediately dissatisfied with his performance; (3) that diabetes is a disability pursuant to

16  California Government Code section 12926.1(c); (4) that while he was out on medical leave in

17  2008, during two visits to the plant, Long and Vicary both made comments about his appearance;

18  and (5) that upon his return to work, Stofle inquired about Plaintiff's ability to remain on medical

19  disability.

20      Plaintiff admitted in his deposition that he did not advise anyone at Certainteed that he

21  was disabled following his return to work in May 2008.  (Holtzclaw Depo. at 158.)  Plaintiff's

22  specific references during his deposition to comments made prior to his return to work and prior

23  to his doctor releasing him to return to work in May 2008 are irrelevant.  (Holtzclaw Depo. at

24  106-107.)  When one is out on medical leave, having another employee comment on the party's

25  appearance - such as weight loss - is hardly evidence of a disability *upon a return to work*.

26

27

28                                          20

1    With regard to Stofle's comments, including asking Plaintiff if he "couldn't find a way to

2    have the doctor put [him] on medical disability" (Holtzclaw Depo. at 108-109), this Court finds

3    that the comments are insufficient to establish a prima facie case that Plaintiff suffered from a

4    disability.[6]

5    There is no evidence that anyone at Certainteed perceived Plaintiff as having an actual or

6    potential physical injury upon his return to work.  Plaintiff's physician provided Certainteed with

7    a medical release indicating Plaintiff was released to full duty without restriction.  (Clark Depo.

8    at 72; Long Depo. at 170; Vicary Depo. at 74; *see also* Holtzclaw Depo. at 34, 99.)  Plaintiff's

9    own belief that he was disabled (Holtzclaw Depo. at 105-106) is not relevant.  "The sole issue

10   under the 'regarded as' definitional prong is whether the employer believes an applicant or

11   employee is physically disabled."  *Gelfo v. Lockheed Martin Corp.*, 140 Cal.App.4th at 52.

12   Subdivision (a) of California Government Code section 12940 prohibits an employer

13   from discharging an employee who is otherwise qualified to perform his or her job because of a

14   physical disability. A physical disability includes diabetes.  Cal. Govt. Code § 12926.1(c).

15   Here, there is no evidence that Plaintiff's medical leave in 2008 was in any way related to

16   his diabetic condition.  Rather, Plaintiff took medical leave in order to undergo a second surgery

17   on his neck.  There is no evidence of any clinical manifestation of Plaintiff's diabetic condition

18   either prior to his requested medical leave, nor upon his return.  Plaintiff returned to work and

19   was fully released by his physician following a surgery unrelated to diabetes.  Moreover, Plaintiff

20   provides no authority for the proposition that a diagnoses of diabetes followed by a surgical

21   procedure unrelated thereto establishes a disability making achievement of a major life activity

22   difficult.  Were the Court to accept Plaintiff's assertion, any diabetic person could meet the

23   burden of establishing a disability by virtue of diagnosis alone.  Yet this Court's interpretation of

24   the statute and its intent calls for an employer's adverse action to be actually related to the

25   _____

26   [6]The Court notes that Plaintiff testified he wanted to work and had been looking for employment.  Further,
     he testified he had no ongoing back or neck issues.  (Holtzclaw Depo. at 42-44, 134.)  Plaintiff has made no claim
27   for disability benefits.  Holtzclaw Depo. at 200.)

28

1   recognized disability.  In other words, the Court interprets the intent of the statute to require an

2   adverse action directly related to Plaintiff's diabetes versus an adverse action purportedly related

3   to Plaintiff's leave for neck surgery.

4                              2.       Qualified Individual

5           No party disputes whether Plaintiff was a qualified individual for purposes of establishing

6   a prima facie case of disability discrimination.

7                              3.       Adverse Employment Action Because of Disability

8           Plaintiff claims that he took several medical leaves of absence while employed by

9   Defendant, yet when he returned to work in May 2008, he was "reassigned to work on a special

10  project and was given a new title as Inventory Reduction Specialist."

11          Defendant contends that Plaintiff cannot establish an adverse employment action as a

12  result of his alleged or perceived disability.  Plaintiff requested and was granted medical leave

13  over and above that permitted by the FMLA or CFRA.  He received full compensation during

14  that period.  Prior to taking the 2008 leave of absence, Plaintiff has been "reassigned to a non-

15  supervisory position, placed on a final written warning, and had received successive poor

16  performance evaluations for 2006 and 2007."

17          Here, Plaintiff's burden that an adverse employment action was *due to* his alleged

18  disability cannot be met.  The fact that Plaintiff was terminated about two months after his return

19  from a medical leave of absence does not "infer, if such actions remain unexplained, that it is

20  more likely than not that such actions were based on a prohibited discriminatory criterion,"

21  *Sandell v. Taylor-Listug, Inc.*, 188 Cal.App.4th 297, 310 (2010), quoting *Reid v. Google, Inc.*, 50

22  Cal.4th at 520, n.2.  The adverse action here is not unexplained, nor does it infer that the action

23  was more likely than not discriminatory.

24          Clark reassigned Plaintiff upon his return to work to a special project in an effort to

25  reduce company inventory.  (Clark Depo. at 46, 124.)  Plaintiff's other duties were "dwindling

26  away" due to the state of business.  (Clark Depo. at 39-40; *see also* Long Depo. at 58-59, 63.)

27

28                                              22

Additionally, Clark and Long testified that the Inventory Reduction Specialist was not a position in the company, nor was it Plaintiff's official job title. Rather, the document was created in an effort to provide Plaintiff's physician with a description of Plaintiff's duties. The duties of that position were more physically demanding than those of the maintenance buyer position. The doctor would use the document to assess whether or not, in light of Plaintiff's surgery and recovery, he would be able to return to work and when. (*See* Clark Depo. at 114, 118, 163-64, 175-176; Long Depo. at 65, 162-166, 175-178.)

In sum, Plaintiff fails to satisfy at least one, if not two, of the elements of his prima facie case. As a result, Defendant is entitled to summary judgment. *See Caldwell v. Paramount Unified School District*, 41 Cal.App.4th at 203, 48 Cal.Rptr.2d at 457.

Nevertheless, and assuming arguendo that Plaintiff established disability here, Defendant remains entitled to summary judgment. As previously explained, Defendant has met its burden of showing the decision to terminate Plaintiff was based on legitimate, non discriminatory factors, and Plaintiff has not proven that those reasons were a pretext for discrimination.

### *Plaintiff's Claims re Failure to Provide Reasonable Accommodation & Failure to Engage in the Interactive Process*

The complaint also alleges that Certainteed violated FEHA by failing to accommodate Plaintiff's physical disability upon his return to work following approved medical leave.

Pursuant to California Government Code section 12940(m), it is unlawful, and separately actionable under FEHA, for an employer to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee, unless the accommodation would cause undue hardship to the employer. *Raine v. City of Burbank*, 135 Cal.App.4th 1215, 1222-23 (2006) (citing Cal. Govt. Code § 12940(m)); *see also King v. United Parcel Service, Inc.*, 152 Cal. App.4th at 443. "[T]he position for which an accommodation is required is the employment position the [disabled individual] holds or desires." *Hastings v. Department of*

1   *Corrections*, 110 Cal.App.4th 963, 972 (2003).  The employee has "the burden of giving the

2   employer notice of the disability."  *Raine*, 135 Cal.App.4th at 1222.

3         Once notice is given, the employer must take affirmative steps and the parties must

4   engage in an interactive process in order to attempt to fashion a reasonable accommodation. *See*

5   *King*, 152 Cal.App.4th at 443; *Gelfo v. Lockheed Martin Corp*., 140 Cal.App.4th 34, 54 (2006);

6   *Raine*, 135 Cal.App.4th at 1222.  An employer is only required to make a "reasonable

7   accommodation," it is not required "to choose the best accommodation or the specific

8   accommodation a disabled employee or applicant seeks."  *Raine*, 135 Cal.App.4th at 1222;

9   *Hanson v. Lucky Stores, Inc*., 74 Cal.App.4th 215, 228 (1999).

10        Examples of "reasonable accommodations" include: "[a]ccessibility . . . [j]ob

11  [r]estructuring, . . . reassignment to a vacant position, part-time or modified work schedules,

12  acquisition or modification of equipment or devices, adjustment or modification of examinations,

13  training materials or policies, the provision of qualified readers or interpreters, and other similar

14  actions."  *Hastings*, 110 Cal.App.4th at 972.  "A reassignment, however, is not required if there

15  is no vacant position for which the employee is qualified."  *Raine*, 135 Cal.App.4th at 1223;

16  *Spitzer v. Good Guys, Inc*., 80 Cal.App.4th 1376, 1389 (2000).  The obligation to reassign an

17  "employee who cannot otherwise be accommodated does not require creating a new job, moving

18  another employee, promoting the disabled employee, or violating another employee's rights

19  under a collective bargaining agreement."  *Hastings*, 110 Cal.App.4th at 978; *Spitzer*, 80

20  Cal.App.4th 1389.  "What is required is the duty to reassign a disabled employee if an already

21  funded, vacant position at the same level exists."  *Raine*, 135 Cal.App.4th at 1223; *Hastings*, 110

22  Cal.App.4th at 972.  Generally, "the reasonableness of an accommodation is an issue for the

23  jury."  *Prilliman v. United Air Lines, Inc.*, 53 Cal.App.4th 935, 954 (1997).

24        Both the Ninth Circuit, Federal District Courts, and California courts require an employer

25  to demonstrate the following in order to obtain summary judgment on a claim of failure to

26  accommodate:

27

28                                                  24

(1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith.

*Timmons v. United Parcel Service, Inc.*, 310 Fed.Appx. 973, 975 (9th Cir. 2009); *Watkins v. Ameripride Services*, 375 F.3d 821, 829 (9th Cir. 2004); *Hood v. Time Warner Cable LLC*, 2009 WL 1202561, 6 (C.D. Cal. 2009); *Riordan v. Federal Exp. Corp.*, 2008 WL 3166524, 15 (E.D. Cal. 2008); *King v. United Parcel Service, Inc.*, 152 Cal.App.4th at 443; *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 263 (2000).

Here, Plaintiff testified that he did not require any sort of accommodation upon his return, that he did not request any sort of accommodation upon his return, and that he had been released by his doctor to return to work without restriction.  (*See* Holtzclaw Depo. at 99, 102-104.)  Other employees also testified that Plaintiff never indicated he had a disability that required an accommodation upon his return to work in May 2008.  (Clark Depo. at 72; Long Depo. at 170.)  Thus, the Court need not address whether an accommodation was offered and refused, whether there was a vacant position for which Plaintiff was qualified and capable of performing, or whether Certainteed did everything in its power to find a reasonable accommodation.  Simply stated, in the absence of notice, a defendant cannot be expected to assume an accommodation is needed and take action.  *Raine v. City of Burbank*, 135 Cal.App.4th at 1222.  Accordingly, Defendant is entitled to summary judgment.

### Plaintiff's Claim for Retaliation

The *McDonnell Douglas* burden-shifting test also governs retaliation claims.  *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987).  To establish a prima facie case of retaliation, plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action.  *Id*.  To establish causation, a plaintiff must show that "engaging in the

protected activity was one of the reasons for his firing and that but for such activity he would not
have been fired." *Villiarimo*, 281 F.3d at 1064-65.

Here, Plaintiff engaged in the protected activity of taking medical leave.  Once he was
cleared in May 2008, he returned to work for approximately two months before being terminated.
Plaintiff can establish the first two elements of a prima facie case of retaliation.  However,
Plaintiff cannot meet his burden of establishing a causal link between his having taken medical
leave and his subsequent termination.

The temporal proximity present in this case is insufficient to establish the causation
element.  "[T]iming alone will not show causation in all cases; rather, 'in order to support an
inference of retaliatory motive, the termination must have occurred fairly soon after the
employee's protected expression.'"  *Villiarimo*, 281 F.3d at 1065 (quoting *Paluck v. Gooding
Rubber Co.*, 221 F.3d 1003, 1009-10 (7th Cir. 2000)); *Clark County School Dist. v. Breeden*, 532
U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (stating that the temporal proximity
must be "very close").  Courts have found a three-month period between the protected activity
and the adverse employment action insufficiently close to support a finding of causation based on
proximity of time.  *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997); *Clark*, 532
U.S. at 273-74 (citing *Richmond* with approval).

Here, Plaintiff's termination occurred about fifty-six days after he returned to work from
medical leave.  Approximately thirty-nine working days, less the July 4 holiday, elapsed between
May 19 and July 14, 2008.  Therefore, this temporal proximity is insufficient to establish his
prima facie case, let alone his burden to overcome Certainteed's nondiscriminatory reason for
terminating him.  Moreover, Plaintiff had been on notice since at least 2007 that his job
performance was less than satisfactory and this notice occurred prior to his request for medical
leave.

This Court finds the nearly two months between Plaintiff's return from medical leave and
his subsequent termination is insufficient to establish the causation element as Plaintiff cannot

1  establish that "but for" having taken medical leave he would not have been fired.  *See Villiarimo*,

2  281 F.3d at 1064-65.

3       Plaintiff cites to *King v. Preferred Technical Group*, 166 F.3d 887, 893 (7th Cir. 1999) in

4  support of his argument there is temporal proximity here.  Plaintiff's reliance is misplaced

5  however.  In *King*, the plaintiff was terminated "only one day after she completed" her medical

6  leave.  *Id.*  "Mere sequence is not enough - that would be the classic logical fallacy of 'post hoc

7  ergo propter hoc' (after the fact, therefore because of the fact)."  *See Chen v. County of Orange*,

8  96 Cal.App.4th 926, 931, 116 Cal.Rptr.2d 786 (2002).

9       Plaintiff makes much of the opinion of Nelson Holly ("Holly"), a former human resources

10 manager at Certainteed at the Chowchilla plant.  Holly had a low opinion of Plaintiff and

11 apparently at one time suspected Plaintiff was malingering during an earlier medical leave taken

12 in 2001.  However, this is of no consequence and presents no genuine issue of material fact as

13 Holly retired July 30, 2007.  (Holly Depo. at 9-10.)  Moreover, Holly did not recall discussing

14 either the results of the 2007 performance reviews - or the spreadsheet reflecting his results of

15 same - with plant manager Vicary.  (Holly Depo. at 32, 54.)  Holly did not speak with Vicary

16 about the 2001 surveillance[7] conducted of Plaintiff either, as Vicary was not plant manager at the

17 time.  (Holly Depo. at 52.)  Finally, Holly did not speak with Vicary about Plaintiff having taken

18 any medical leave after 2001.  (Holly Depo. at 73.)  Holly spoke with Clark about Plaintiff's

19 performance between 2005 and his retirement in 2007, but he did not recall specifics.  (Holly

20 Depo. at 78.)  He did recall reviewing the levels or categories of performance to be employed in a

21 performance review.  (Holly Depo. at 79-81.)  Vicary was aware of Holly's opinion of Plaintiff,

22 but it was of no consequence.  (Vicary Depo. at 75-78, 88-89.)

23 //

24 //

25

26       [7]As the result of another employee's report, surveillance of Plaintiff was arranged.  The resulting report
    revealed that Plaintiff had not violated any restriction imposed by his doctor during his medical leave in 2001.  Thus,
27  no further action was taken.  (Holly Depo. at 87-88.)

28                                              27

1    Given Holly's lack of communication with Vicary and the fact he was retired at the time

2  of Plaintiff's termination in 2008, these facts simply do not present genuine issues of material

3  fact regarding Plaintiff's claim of retaliation for having taken a medical leave in 2008.

4    As with Plaintiff's claim of age discrimination, "[o]nly after such a prima facie case is

5  made does the case progress to the familiar burden-shifting analysis typically used to test

6  discrimination claims on the merits." *Chen v. County of Orange*, 96 Cal.App.4th at 949.  Here

7  again, Plaintiff has not met his burden.  Additionally, Plaintiff cannot establish pretext for

8  discrimination following Defendant's legitimate, non-discriminatory reasons for his termination.

9  Accordingly, the Court GRANTS summary judgment on Plaintiff's retaliation claim.

10    ***Plaintiff's Claim for Wrongful Termination in Violation of Public Policy***

11    The complaint alleges Plaintiff was terminated by Certainteed in violation of public

12  policy.

13    In California, an "employer may not discharge an at will employee for a reason that

14  violates fundamental public policy.  This exception is enforced through tort law by permitting the

15  discharged employee to assert against the employer a cause of action for wrongful discharge in

16  violation of fundamental public policy." *Stevenson v. Superior Court*, 16 Cal.4th 880, 887

17  (1997).  FEHA's prohibition against racial and disability discrimination may form the basis of a

18  wrongful discharge in violation of public policy claim.  *See City of Moorpark v. Superior Court*,

19  18 Cal.4th 1143, 1159-61 (1998).  However, where a plaintiff's FEHA claim fails, a claim of

20  wrongful discharge in violation of the public policy expressed in FEHA also fails.  *De Horney v.*

21  *Bank of America Nat'l Trust & Sav. Assoc.*, 879 F.2d 459, 465 (9th Cir. 1989); *Esberg v. Union*

22  *Oil Co.*, 28 Cal.4th 262, 272 (2002).

23    Here, because Plaintiff's FEHA claim has failed, *ante*, his claim for wrongful discharge

24  in violation of public policy also necessarily fails.  Defendant is entitled to summary judgment on

25  this claim.

26

27

28                                          28

***Punitive Damages***

To prevail on a claim for punitive damages, a plaintiff must establish both "oppression, fraud or malice" and that the conduct at issue was performed or ratified by an "officer, director or managing agent" by clear and convincing evidence. *Barton v. Alexander Hamilton Life Ins. Co. of Amer.*, 110 Cal.App.4th 1640, 1644 (2003). "The clear and convincing standard requires a finding of high probability . . . so clear as to leave no substantial doubt; sufficiently strong to command the unhesitating assent of every reasonable mind." *Scott v. Phoenix Schools, Inc.*, 175 Cal.App.4th 702, 715 (2009) (internal quotation marks omitted). "If the plaintiff is going to prevail on a punitive damages claim, he or she can only do so by establishing malice, oppression or fraud by clear and convincing evidence. Thus, any evidence submitted in response to a motion for summary adjudication must necessarily meet that standard." *Basich v. Allstate Ins. Co.*, 87 Cal.App.4th 1112, 1118-19 (2001).

California Civil Code section 3294 "permits punitive damages against a corporate employer if the employee is sufficiently high in the corporation's decision-making hierarchy to be an 'officer, director or managing agent.'" *Gelfo v. Lockheed Martin Corp.*, 140 Cal.App.4th 34, 63, 43 Cal.Rptr.3d 874, 896 (2006), citing *White v. Ultramar, Inc.*, 21 Cal.4th 563, 572, 88 Cal.Rptr.2d 19 (1999). "'Managing agents' are employees who 'exercise [] substantial discretionary authority over decisions that ultimately determinate corporate policy." *Cruz v. HomeBase*, 83 Cal.App.4th 160, 167, 99 Cal.Rptr.2d 435 (2000), internal citations and italics omitted.

Here, no evidence has been presented by Plaintiff to indicate any of the Certainteed personnel at the Chowchilla plant who were involved in the decision to terminate his employment were officers, directors and/or managing agents. In fact, Defendant has presented evidence to the contrary. (Doc. 46, ¶ 8; Doc. 47, ¶ 5; Doc. 48, ¶ 5.)

Plaintiff claims that "the evidence presented shows that [Long, Vicary and Clark] were not the only individuals who were involved in decisions related to Plaintiff," and thus summary

1  judgment is not proper.  However, Plaintiff's memorandum of points and authorities fails to cite

2  specifically to "the evidence" in support of this assertion.  Nonetheless, as pointed out by

3  Defendant, in his separate statement of disputed facts, Plaintiff refers to other individuals

4  involved including the vice-president of operations, and David Bromzer, director of human

5  resources, as testified to by Vicary.

6      A review of the deposition transcript of James Vicary reveals the following:

7          MR. OREN: Q.  You said that there were two or three discussions about
        the termination of Mr. Holtzclaw over a period of one to two weeks.  Can you tell
8        me about the next discussion?
          A.  Well, fundamentally the first discussion was the three of us meeting to
9        determine the recommendation that I would make to my boss.  So after we
        discussed his termination, then I would - - I had the discussion with my immediate
10        supervisor, my boss, VP of Ops that we would - - my recommendation was to
        terminate him and, you know, and then made that recommendation with - - I'm
11        trying to remember again who was in VP or who was the director of HR at the
        time.  I don't recall, but again, discuss it with my boss, make sure he was aware of
12        the situation, make sure there were no concerns from the centralized HR function
        and then we would meet back again, the three of us, to say, you know, that the
13        senior management had accepted the recommendation for termination, draft the
        right documentation regarding severance and so on.

14

15  (Vicary Depo. at 89-90.)  Contrary to Plaintiff's assertion otherwise, there is no evidence to

16  indicate that either the vice president of operations or the director of human resources exercised

17  any substantial discretionary authority over the plant's decision to terminate Plaintiff from

18  employment.  The plain language of Vicary's testimony indicates the decision was in fact made

19  in Chowchilla and a recommendation that Plaintiff's employment be terminated was made to

20  Vicary's supervisor and the director of human resources.  In any event, Plaintiff has not

21  submitted evidence to indicate that either of these individuals was in fact an officer, director or

22  managing agent of Certainteed.  Titles alone are insufficient and call for speculation.

23      In sum, Plaintiff has failed to submit evidence in response to Defendant's motion that

24  meets the clear and convincing evidence standard.  *Basich v. Allstate Ins. Co.*, 87 Cal.App.4th at

25  1118-19.  Therefore, Defendant is entitled to summary judgment on this claim.

26

27

28                                              30

**CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Certainteed's motion for summary judgment as to Plaintiff's complaint. Hence, the Court **DIRECTS** the Clerk to enter judgment in favor of Defendant Certainteed Corporation, and against Plaintiff Eddie Holtzclaw, and to close this case.


IT IS SO ORDERED.

**Dated:**    **June 7, 2011**              /s/ **Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE

31